IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTOINETTE KING, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 04-4243 (JBS) |
| v. | |
| | **OPINION** |
| CAPE MAY COUNTY BOARD OF FREEHOLDERS, <u>et al</u>. | |
| Defendants. | |

APPEARANCES:

Alan L. Krumholz, Esq.
KRUMHOLZ DILLON, PA
574 Summit Avenue
Jersey City, NJ 07306
        Attorney for Plaintiff

Richard L. Goldstein, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
        Attorney for Defendant Cape May County Board of Freeholders
        and Cape May County Department of Public Safety Training
        Center

Thomas W. Sumners, Jr., Esq.
SUMNERS GEORGE, PC
849 West State Street
Trenton, NJ 08618
        Attorney for Defendant Bridgeton Board of Education

Barbara L. Bakley-Marino, Esq.
OFFICE OF COUNTY COUNSEL
Cape May Courthouse
4 Moore Road
Cape May, NJ 08210
        Attorney for Defendant Gary G. Schaeffer

**SIMANDLE**, District Judge:

        Plaintiff Antoinette King filed this action against

Defendants under 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-4.1 et seq. ("LAD") alleging discrimination based on age and gender.[1]  The matter is before the Court upon the motions for summary judgment by Defendants Cape May County Board of Freeholders ("BOF"), Cape May County Department of Public Safety Training Center a/k/a Cape May County Police Academy ("Police Academy"), Bridgeton Board of Education ("BOE"), and Gary Schaeffer, Director of the Police Academy.  For the reasons set forth below, Schaeffer's motion for summary judgment will be denied in its entirety and the motions by the Police Academy and the BOF will be granted as to King's § 1983 claims but denied as to the LAD claims.  Finally, the BOE's motion for summary judgment will be granted.

I.  **BACKGROUND**

Plaintiff was employed as an Educational Enforcement Officer ("EEO") by the Bridgeton Board of Education from October 25, 1999 to October 15, 2003.  (Schaeffer's Mot. for Summ. J. at 3; Pl. Opp. at 5.)  As a condition of her employment, King was required to obtain certification as a police officer.  (Compl. ¶ 3.)  Accordingly, the BOE enrolled Plaintiff at the Cape May County

---

[1] Though the complaint is not a model of clarity and does not identify the constitutional provision or federal law alleged to have been violated, Plaintiff's opposition to the instant motion clarifies that the "claim under § 1983 is based upon the alleged denial of equal protection rights, and not due process rights."  (Pl. Opp. at 40.)

2

Department of Public Safety Training Center in the Special Law
Enforcement Officer Class ("SLEO") commencing May 3, 2003.  (Id.
at ¶ 4; Schaeffer's Mot. for Summ. J. at 3.)  King was sponsored
into the Academy by Acting Bridgeton Chief of Police Gregory
Everingham.  (Id.)

King alleges that once her training at the Academy began,
Defendant Schaeffer, Director of the Police Academy, told her
that she was "'too old' and that she had 'flunked the physical
examinations.'"[2]  (Compl. at ¶ 6.)  For example, King alleges
that she and Leston Hall, another BOE employee enrolled at the
Police Academy,[3] were told by Defendant Schaeffer during their
first day that "he felt as though [their] age was a problem."[4]
(5/16/05 King Dep. Tr. at 40:13-14.)  During this encounter, King
claims that Schaeffer stated that "it would be best for [King and
Hall] to withdraw and attend the Fall session instead of the
session that [they] were attending."  (King Dep. Tr. at 42:4-7.)

According to Plaintiff, Schaeffer also stated that he had
contacted Robert Stevens, Security Coordinator at the Bridgeton

---

[2] King was thirty-six years old at the time she entered the
Academy. (Pl. Opp. Br. at 5-6.)

[3] Hall was thirty-nine years old when he began the Academy.
He voluntarily withdrew from the Academy before the completion of
the course.  (10/17/05 Hall Dep. Tr. at 19:9-20:2.)

[4] Defendant Schaeffer claims that this conversation took
place on the third day.  (10/17/05 Schaeffer Dep. Tr. at 62:19-
20.)  This factual dispute is immaterial.

Board of Education, and informed him that he wanted King and Hall
to withdraw from the Academy.  (Pl. Opp. Br. at 6.)  Following
this encounter, King contacted Stevens, who confirmed receiving
Schaeffer's phone call.  (King Dep. Tr. at 43:9-15.)  King also
alleges that Schaeffer reiterated his concern about King and
Hall's age to Stevens during the conversation.[5]  (Id.)

    The Complaint alleges a second encounter between King and
Schaeffer a few days later when she was again called into
Schaeffer's office.  At that meeting Schaeffer asked Plaintiff to
withdraw from the course and rejoin in the Fall, but she refused.
(King Dep. Tr. at 64:9-11.)  According to King, she was then
called into Schaeffer's office "every other day" during the
entire time she was at the Academy and was either told she was
not receiving credit for the physical training exercises or was
asked to withdraw from the course.  (Pl. Opp. Br. at 7; King Dep.
Tr. at 63:20-24.)

    A third encounter allegedly occurred following a physical
training exercise on June 1, 2003.  On that day, King claims she
stopped running during the exercise in order to avoid a collision
with another runner.  She was then told by an instructor: "That's
it, you're out of here."  (King Dep. Tr. at 106:9-10.)  She
reported to Director Schaeffer's office following the incident

---

[5] Schaeffer disputes that he ever discussed King's or Hall's
ages with King or Stevens.  (Schaeffer Dep. Tr. at 92:16-24.)

whereupon he told her she did not get any credit for that day and again urged her to withdraw from the course.  According to Plaintiff, Schaeffer was "screaming at the top of his lungs" when she refused to quit.  (Id. at 106:22-23.)  The following day King spoke to Stevens who informed her that he had withdrawn her from the Academy.  (Id.)  According to King, Stevens also indicated that Schaeffer had stated he "just wanted males there and women should be home barefooted and pregnant."  (Id. at 107:20-21.) King was withdrawn from the Academy on June 5, 2003.[6]  (Compl. at ¶ 7.)

Following her withdrawal from the Academy, King was enrolled at the Gloucester Police Academy by the Bridgeton Board of Education in August or September, 2003.  (Pl. Opp. Br. at 8.) King was dismissed from that academy after she failed the same academic examination on two occasions.  (Schaeffer's Mot. for Summ. J. at 3.)  Stevens offered King an opportunity to enter another police academy but she refused.  (Id.)  Moreover, King was offered a position as a security monitor at the Bridgeton Board of Education upon her discharge.  She turned down that offer as well.[7]

---

[6] Defendant Schaeffer contends that King was withdrawn by both the Bridgeton Board of Education and the Bridgeton Police Department.  (Def. Schaeffer's Mot. for Summ. J. at 3.)

[7] The security monitor position paid approximately ten dollars less than her previous position.  (Schaeffer's Mot. for Summ. J. at 9.)

King filed this complaint against Defendants Schaeffer, Cape May County Board of Freeholders, Cape May County Police Academy, and Bridgeton Board of Education on August 31, 2004.  Defendant Cape May County Board of Freeholders filed a cross claim against Defendant Bridgeton Board of Education.  Defendant Schaeffer also filed a cross claim against the Bridgeton Board of Education. Defendants subsequently filed the instant motions.

## II.   <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Summary judgment is appropriate when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[8]  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>Id.</u>

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[t]he nonmoving party's evidence 'is to be believed, and all justified inferences are to be drawn in [that party's] favor.'"  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)(quoting <u>Liberty Lobby</u>, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that

---

[8] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>Id.</u>

properly can be resolved in favor of either party."[9]  <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995)(citations omitted).

## III. <u>DISCUSSION</u>

### A.   **Section 1983 claims**

Section 1983 allows a plaintiff to bring a claim for violations of her federal constitutional rights.[10]  To state a claim for relief under Section 1983, a plaintiff must allege that the defendant: (1) violated a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

---

[9] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). However, the non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).

[10] Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

King's Section 1983 claims here are premised on the Fourteenth Amendment Equal Protection clause.[11]  (Pl. Opp. Br. at 40.)

      1. <u>Section 1983 Claims against BOF and Police Academy</u>

King asserts a claim against both the BOF and the Police Academy under § 1983 for age and gender discrimination in violation of her Fourteenth Amendment Equal Protection rights.

As an initial matter, summary judgment will granted in favor of the Police Academy.  It is well established that a police department cannot be sued in conjunction with the city under § 1983 because police departments are administrative arms of the local municipality and not separate judicial entities.  <u>Linden v. Spagnola</u>, No. 99-2423, 2002 U.S. Dist. LEXIS 14573, at *17-18 (D.N.J. June 27, 2002); <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997).  The same is true for sheriffs.  <u>See Open Inns, LTD v. Chester County Sheriff's Dep't</u>, 24 F. Supp. 2d 410, 417 n.13 (E.D.Pa. 1998)(holding that "Chester County

_____

[11] Defendants argue that the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 - 624, preempts any action Plaintiff may have against Defendants for age discrimination under § 1983.  However, because there is no employer-employee relationship between the BOF, the Police Academy and Plaintiff, and because King was less than forty years old at the time of the conduct at issue, her claim against these defendants would not fall within the scope of the ADEA, and the Court need not determine the preemption issue.  <u>Cf.</u> <u>Zombro v. Baltimore City Police Dep't</u>, 868 F.2d 1364 (4th Cir. 1989) (preemption bars § 1983 action for age discrimination in employment premised on Fourteenth Amendment); <u>Purtill v. Harris</u>, 658 F.2d 134 (3d Cir. 1981) (ADEA preempts § 1983 constitutional claim alleging age discrimination in employment brought by federal employee protected by ADEA).

Sheriff's Department is a subunit of Chester County which cannot be sued because it is merely an arm of the local municipality, and thus not a separate legal judicial entity"); Regalbuto v. City of Philadelphia, 937 F. Supp. 374 (E.D.Pa. 1995)(holding that a fire department is not a separate judicial entity).  This Court finds that the Police Academy, as a division of the County Board of Freeholders, is likewise an administrative arm of the County and not a separate judicial entity under § 1983. Therefore, summary judgment will be granted in favor of the Police Academy on King's § 1983 claim.

Next, the Court finds that summary judgment should also be granted in favor of the BOF on Plaintiff's § 1983 claim. Municipalities and local government units are "persons" subject to suit under § 1983.[12]  Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 690 (1978).  Municipalities can be "sued directly under § 1983 for monetary, declaratory, or injunctive relief," where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."  Id.  Policy is made when "'a decisionmaker possess[ing] final authority to establish

---

[12]  However, a municipality "cannot be held liable solely because it employs a tortfeasor" and therefore § 1983 does not authorize respondeat superior liability.  Monell, 436 U.S. at 691.

municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Liability can be imposed for a single act taken by a municipal policy maker under appropriate circumstances. Pembaur, 475 U.S. at 481.

In addition, local governments may be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91. Conduct is considered a custom "when . . . though not authorized by law, 'such practices by state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 690).

Here, King presents no evidence of any discriminatory policy or custom adopted by the BOF. While Schaeffer may be considered a policy maker because he possesses the authority to establish policy for the Police Academy, his alleged actions here do not constitute an "official proclamation, policy or edict." Andrews, 895 F.2d at 1480. Furthermore, King points to no "permanent or well settled" practice of age or gender discrimination at the Police Academy. For these reasons, BOF's motion for summary judgment as to Plaintiff's § 1983 claim will be granted.

2.   Section 1983 claims against Schaeffer - individual
     capacity

Plaintiff claims Schaeffer discriminated against her on the
basis of gender and age in violation of Section 1983.  The Court
will treat with each claim in turn.[13]

a.   Gender discrimination claims

King initially asserts a gender discrimination claim against
Schaeffer under § 1983 for violation of her Fourteenth Amendment
Equal Protection rights.

Gender discrimination claims under the Equal Protection
clause are analyzed using the framework established by McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Morrissey v.
Luzerne County Cmty. Coll., 117 Fed. Appx. 809, 814 n.4 (3d Cir.
2004)(holding the "showing plaintiff must make for § 1983 gender
discrimination is the same as for Title VII claims"); Stewart v.
Rutgers, the State Univ., 120 F.3d 426, 432 (3d Cir. 1997).
Under this framework, the plaintiff must first establish a prima
facie case of gender discrimination.  McDonnell, 411 U.S. at 802.

_____

[13] King also asserts a § 1983 claim against Schaeffer in his
official capacity as director of the Police Academy.  It is an
established principle that "[s]uits against state officials in
their official capacity . . . should be treated as suits against
the state."  Hafer v. Melo, 502 U.S. 21, 25 (1991).  Any claim
directed against Schaeffer in his official capacity must be
considered a suit against Cape May County itself, however, given
that the Police Academy is a division of the County.  Since the
BOF is not liable under § 1983, see supra, any claim against
Schaeffer in his official capacity must fail.

11

Once plaintiff has established a prima facie case, the burden
shifts to the defendant to "articulate some legitimate,
nondiscriminatory reason" for the action taken.  Id.  If the
defendant makes this showing, the burden shifts back to the
plaintiff to demonstrate that the stated reason is merely a
pretext for discrimination.  Id. at 804.

In order to establish a prima facie case of gender
discrimination under the Equal Protection clause, Plaintiff must
prove the "existence of purposeful discrimination." Andrews, 895
F.2d at 1478.  Specifically, Plaintiff must prove that she
"'receiv[ed] different treatment from that received by other
individuals similarly situated'" and that the "disparate
treatment was based upon her gender." Id. (quoting Kuhar v.
Greensburg-Salem School Dist., 616 F.2d 676, 677 n.1 (3d Cir.
1980).  See also Cataldo v. Moses, 2005 WL 705359, March 29,
2005, *13 (D.N.J.)(holding plaintiff may assert an equal
protection claim when he is a member of a protected class
similarly situated to members of an unprotected class and was
treated differently from the unprotected class).

Here, Plaintiff has submitted sufficient proofs from which a
reasonable jury could find that she was treated differently than
other similarly situated individuals on the basis of gender.  To
be sure, King asserts that Leston Hall, a male student
approximately the same age who was enrolled in the same course at

12

the Police Academy, received similar treatment from Schaeffer.
(Pl. Opp. Br. at 6.)  Specifically, both were repeatedly called
into Schaeffer's office and asked to withdraw from the course and
re-enroll in the Fall.  (Id. at 6-7.)  However, Plaintiff
testified that Schaeffer also told her she should be home
"barefoot and pregnant."  The Court finds that a reasonable jury
could find such a statement constitutes discrimination based on
gender.  Moreover, Defendant has not offered legitimate non-
discriminatory reasons for the statement.[14]

For these reasons, the Court will deny Defendant's summary
judgment motion as to Plaintiff's Section 1983 claim against
Schaeffer for gender discrimination.

> b.  Age discrimination claims

King also asserts an age discrimination claim against
Schaeffer under § 1983 for violating her Equal Protection rights
under the Fourteenth Amendment.  Unlike gender discrimination
claims brought under Title VII and the Equal Protection clause,
age discrimination claims under the Equal Protection clause are
not analyzed according to the McDonnell Douglas framework.  In
Izquierdo Prieto v. Mercado Rosa, the First Circuit held that
"[t]he McDonnell Douglas test applies to racial and sex
discrimination claims under Title VII, and has been applied as
well to age discrimination claims brought under the ADEA . . . .

---

[14] Again, Schaeffer denies having made the statement.

13

The approach is irrelevant to a claim of age discrimination under the Constitution . . . ."  894 F.2d 467, 470 n.3 (1st Cir. 1990). Instead, the appropriate analysis is to determine whether age discrimination has occurred and whether any rational basis exists for that treatment.  Id. at 471.

As with gender discrimination claims, to establish an age discrimination claim under the Equal Protection clause plaintiff must prove purposeful discrimination and that she was treated differently from others similarly situated because of her age. See Andrews, 895 F.2d at 1478.  Once disparate treatment is established, plaintiff must demonstrate that no rational basis existed for the difference in treatment.

The Supreme Court has repeatedly held that age is not a suspect classification and older persons do not constitute a discrete and insular minority.  See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000); Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 313 (1976); Vance v. Bradley, 440 U.S. 93, 97 (1979).  Therefore, the Court in Kimel concluded that "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." 528 U.S. at 83.  The Court recognized that an age classification is "presumptively rational" and "the individual challenging its constitutionality bears the burden of proving that the 'facts on

14

which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'"  Id. at 83 (quoting Bradley, 440 U.S. at 111).

Here, there is a genuine issue of material fact as to whether Schaeffer's disparate treatment of King based on age is rationally related to a legitimate government interest.  To be sure, Schaeffer's repeated requests for King to withdraw and re-enroll in the Fall could have been based on King's poor performance on her physical fitness tests.  Nonetheless, a reasonable jury could conclude that Schaeffer's alleged comments that King was "too old" and that her "age was a problem" were not rationally related to any legitimate state interest.  Therefore, Schaeffer's motion for summary judgment as to King's § 1983 claim for age discrimination will be denied.

### B.    New Jersey Law Against Discrimination claims

King next brings state law claims for age and gender discrimination under the New Jersey Law Against Discrimination against the BOF, the Police Academy, and the Bridgeton Board of Education.  Under N.J.S.A. 10:5-4, "[a]ll persons shall have the opportunity . . . to obtain all of the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race, creed, color, national origin, ancestry, age . . . [or] sex." N.J.S.A. 10:5-4.  Therefore, the threshold question is whether

the Police Academy is a place of public accommodation subject to LAD.

     1.   <u>A police academy is a place of public accommodation</u>

The New Jersey legislature has stated that LAD should be construed liberally to achieve its purpose of eliminating the "cancer of discrimination." <u>Dale v. Boy Scouts of America</u>, 160 N.J. 562, 584-85 (1999), <u>rev'd on other grounds</u>, <u>Boy Scouts of America v. Dale</u>, 530 U.S. 640 (2000)). LAD specifically includes the following establishments as places of public accommodation:

> [A]ny tavern, roadhouse, hotel, motel, trailer camp, summer camp, day camp, or resort camp, whether for entertainment of transient guests or accommodation of those seeking health, recreation or rest; any producer, manufacturer, wholesaler, distributor, retail shop, store, establishment, or concession dealing with goods or services of any kind; any restaurant, eating house, or place where food is sold for consumption on the premises; any place maintained for the sale of ice cream, ice and fruit preparations or their derivatives, soda water or confections, or where beverages of any kind are retailed for consumption on the premises; any garage, any public conveyance operated on land or water, or in the air, any stations and terminals thereof; any bathhouse, boardwalk, or seashore accommodation; any auditorium, meeting place, or hall; any theatre, motion-picture house, music hall, roof garden, skating rink, swimming pool, amusement and recreation park, fair, bowling alley, gymnasium, shooting gallery, billiard and pool parlor, or other place of amusement; any comfort station; any dispensary, clinic or hospital; any public library; any kindergarten, primary and secondary school, trade or business school, high school, academy, college and university, or any educational institution under the supervision of the State Board of Education, or the Commissioner of Education of the State of New Jersey.

N.J.S.A. 10:5-4. However, "places of accommodation are not limited to those listed in the statute" and this list is "'merely

illustrative of the accommodations the legislature intended to be within the scope of the statute;' public accommodations that are similar in nature to the ones included in the list are intended to be covered under the LAD." Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 345 (App. Div. 2004)(quoting Fraser v. Robin Dee Day Camp, 44 N.J. 480, 486 (1965)).

Courts have traditionally considered three factors when deciding whether an establishment constitutes a place of public accommodation:  whether "the entity . . . engages in broad public solicitation, whether it maintains close relationships with the government or other public accommodations, or whether it is similar to enumerated or other previously recognized public accommodations." Dale, 160 N.J. at 589.  In particular, "[b]road public solicitation has consistently been a principal characteristic of public accommodations." Id.; see Ptaszynski, 371 N.J. at 347 (a township police station); Chisolm v. McManimon, 97 F. Supp. 2d 615, 622 (D.N.J. 2000)(prison), rev'd on other grounds, 275 F.3d 315 (3d Cir. 2001); Estate of Behringer v. Medical Center Princeton, 249 N.J. Super. 597, 642 (Law Div. 1991)(medical center); Frank v. Ivy Club, 120 N.J. 73, 104-05 (1990)(Princeton University's eating clubs); National Organization for Women, Essex County Chapter v. Little League, Inc., 127 N.J. Super. 522, 531 (App. Div. 1974)(Little League); Clover Hill Swimming Club, Inc. v. Goldsboro, 47 N.J. 25, 33

17

(1966)(swimming club).[15]

For the reasons now explained, the Court holds the Police Academy is a place of public accommodation subject to LAD. The Academy's close relationship with the government and its similarity to other places of public accommodation outweigh the consideration that the Police Academy does not necessarily broadly solicit the public. In Thomas v. County of Camden, the Appellate Division of the Superior Court of New Jersey held that the Camden County Communications Center, which serves as the dispatch center for emergency services throughout the County and as a training center for county personnel, was a public accommodation as defined by LAD. 2006 WL 2032962 (N.J. Super. Ct. App. Div. July, 21, 2006). The court there noted that the

> County of Camden is a creature of state government, N.J.S.A.
> 2A:44-126, and the CCCC is a division of the Department of
> Public Safety, an executive unit of county government. . . .
> A unit of county government performing an executive function
> of county government, N.J.S.A. 2A:44-126, the CCCC is not a
> "private entity that needs to be shoe-horned into a list of
> other, primarily private, entities that provide services to
> the public. . . . It would indeed lead to an anomalous

---

[15] However, courts have also held that the Division of Youth and Family Services is not a place of public accommodation subject to LAD. See Doe v. Division of Youth and Family Services, 148 F. Supp. 2d 462, 496 (D.N.J. 2001)(noting that DYFS, while a state agency, did not resemble any other places of public accommodation mentioned within the statute and does not engage in "broad solicitation in an effort to attract the public to its organization."). Additionally, a volunteer fire department is not a public accommodation since the facilities are "maintained for the use of its members and not for the general public." Blair v. Mayor and Council, Borough of Freehold, 117 N.J. Super. 415, 417 (App. Div. 1971).

> result if private organizations with close ties to
> government agencies were places of public accommodation
> because of those ties, while the government agency itself
> was not."

Id. at *3-4 (quoting Ptasynski, 371 N.J. at 347).  While the
court recognized that the CCCC was not open to the public and was
"locked down 24 hours per day, 7 days per week," it nevertheless
concluded that "'any State governmental agency is a place of
public accommodation for purposes of inclusion under the umbrella
of the LAD.'"  Id. (quoting Ptasynski, 371 N.J. at 348).

Like the CCCC, the Police Academy here is a division of Cape
May County.  It substantially assists other places of public
accommodation such as police departments in carrying out their
functions by training the police officers of the county.
Therefore, while the Police Academy may not be open to the public
or engage in public solicitation, this Court finds that given its
close ties to the government and its similarity to other public
accommodations, the Police Academy is a place of public
accommodation under LAD.

2.  LAD claims against BOF and Police Academy

King's LAD claims against the BOF and Police Academy are
brought under N.J.S.A. 10:5-4, which prohibits a public
accommodation from denying anyone its "accommodations,
advantages, facilities, and privileges" on the basis of a

protected characteristic, such as gender and age.[16]  King alleges
that she was repeatedly called into Director Schaeffer's office
and asked to withdraw from the course.  (Pl. Opp. Br. at 6-7.)
She also alleges that Schaeffer called Stevens on various
occasions asking him to withdraw King from the course.  (Id. at
6-8.)  In addition, King alleges that Schaeffer stated that her
"age was a problem" and that he "just wanted males there and
women should be home barefoot and pregnant."  (King Dep. Tr. at
40:12-20, 107:19-22.)  Based on these proofs, extending all
reasonable inferences in favor of the non-moving party, this
Court finds that a reasonable jury could return a verdict in
favor of Plaintiff.

---

[16] Given that Director Schaeffer is alleged to be the
principal wrongdoer, the liability of the BOF and the Police
Academy arises from the application of the principle of
respondeat superior.  Unlike Section 1983, under LAD an "employer
is liable for a supervisory employee's discriminatory conduct
through the application of the principles set forth in the Second
Restatement of Agency."  Tyson v. Cigna, Corp., 918 F. Supp. 836,
840 (D.N.J. 1996).  In essence, "a supervisor's acts within the
scope of his employment become the acts of the employer under
notions of respondeat superior."  Id.  Under the Second
Restatement of Agency, an individual is acting within the scope
of his employment if the conduct is "(1) the kind he is employed
to perform; (2) it occurs substantially within the authorized
time and space limits; (3) it is actuated, at least in part, by a
purpose to serve the master; and (4) if force is intentionally
used by a servant against another, the use of force is not
unexpectable by the master."  Second Restatement of Agency § 228.
    Here, there is little doubt that Schaeffer, as director of
the Police Academy, is a supervisory employee who was acting
within the scope of his employment when he engaged in the
allegedly discriminatory acts against King.  Therefore, any
discriminatory acts committed by Schaeffer can be imputed to the
BOF and the Police Academy.

Courts apply the McDonnell Douglas framework when analyzing claims under LAD.  See Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 97 (1990).  In order to establish a prima facie case in a public accommodation claim brought under LAD, the "focal issue is whether defendant acted with an actual or apparent design to discourage present or future use of the public accommodation by plaintiff on account of her protected status." Turner v. Wong, 363 N.J. Super. 186, 213 (App. Div. 2003). Furthermore, the "LAD is not limited to outright denial of access or service. . . .  The statutory protection has been interpreted to reach situations where customers are merely discouraged from using a public facility because of verbal comments made to them about their protected status."  Id. at 212.  Furthermore, "[i]t is unquestionably a violation of the LAD for the owner or operator of a public accommodation to tell a person, either directly or indirectly, that his or her patronage is not welcome because of a trait or condition which the LAD protects from discriminatory action . . . ."  Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 216 (App. Div. 2000).

This Court finds that genuine issues of material fact exist as to whether Schaeffer in fact made the allegedly discriminatory comments and whether they were meant to discourage King from attending the course at the Police Academy.  In Turner, the defendant, the owner of a donut shop, referred to the plaintiff,

an African American, using a racial epithet when plaintiff refused to pay for the donut.  The Turner court concluded that the "owner's remark constituted a prima facie basis for a claim of unlawful discrimination under the LAD" and was sufficient to deny defendant's motion for summary judgment.  Turner, 363 N.J. Super. at 212.

In Franek, the defendant, an employee of Tomahawk Lake Resort, a public accommodation, allegedly uttered "I don't want those kind of people here" in front of the disabled plaintiff. Franek, 333 N.J. Super. at 211.  While Plaintiff did not in fact hear the remark, id. at 212, the court held that the "remark by the owner or operator of a public accommodation . . . is a prima facie basis for a claim of unlawful discrimination in a LAD-based action by a handicapped person" and served as a basis for denying summary judgment.  Id. at 217.

Similarly, in the present case Schaeffer's alleged comments that King's "age was a problem" and that "women should be home barefoot and pregnant" are sufficient to establish a prima facie case that Schaeffer intended to discourage King's attendance at the Police Academy because of her age and gender.  In fact, Stevens decided not to re-enroll King in the fall session at the Police Academy because of the treatment she had received, indicating that King was discouraged from attending the Academy

given Schaeffer's allegedly discriminatory conduct.[17]  (8/25/05
Stevens Dep. Tr. at 67:14-21.)  Therefore, the motions for
summary judgment by the Police Academy and the BOF motion will be
denied as to Plaintiff's age and gender discrimination claim
under LAD.

      3.  <u>LAD claims against Schaeffer</u>

King's LAD claim against Schaeffer arises under N.J.S.A.
10:5-12(f), which makes it unlawful for an "agent or employee of
any place of public accommodation" to deny any person "any of the
accommodations, advantages, facilities or privileges thereof . .
. ."  N.J.S.A. 10:5-12(f).

As noted, the standard for examining a public accommodation
claim brought under LAD is "whether defendant acted with an
actual or apparent design to discourage present or future use of
the public accommodation by plaintiff on account of her protected
status."  <u>Turner</u>, 363 N.J. Super. at 213.  This Court already
determined that the statements allegedly made by Schaeffer that
King's "age was a problem" and that "women should be home
barefoot and pregnant," in addition to his repeated requests for
King to withdraw, were sufficient to establish a prima facie case
under LAD and raise a question of fact as to whether the
statements and actions were intended to discourage King's

_____

[17] Moreover, Defendants have not offered a nondiscriminatory
reason for making the challenged statements.

attendance at the Police Academy.  Therefore, Schaeffer's motion
for summary judgment as to Plaintiff's LAD claim under will be
denied as well.

    4. <u>LAD claims against Bridgeton Board of Education</u>

King's LAD claim against the BOE is premised on the theory
that the BOE is liable for the conduct of Stevens.  In
particular, King alleges Stevens aided and abetted the allegedly
discriminatory conduct of Schaeffer by withdrawing King from the
Academy.[18]  (Pl. Opp. 41-43.)

A supervisory employee can be held individually liable under
N.J.S.A 10:5-12(e) for aiding and abetting the discriminatory
conduct of a principal.  <u>Hurley</u>, 174 F.3d at 126.  In order to be
held liable as an aider and abetter, "(1) the party whom the
defendant aids must perform a wrongful act that causes an injury;
(2) the defendant must be generally aware of his role as part of
an overall illegal or tortious activity at the time that he
provides the assistance; (3) the defendant must knowingly and
substantially assist the principal violation."  <u>Id.</u> at 127
(quoting <u>Halberstam v. Welch</u>, 705 F.2d 472, 477 (D.C. Cir.
1983)).  To determine whether a defendant has provided

_____

[18] Plaintiff does not name Stevens as an individual
defendant.  Schaeffer contends that the naming of Stevens as an
individual defendant is implicitly required under <u>Tar v.
Ciasulli</u>, 181 N.J. 70 (2004).  This Court does not find support
for the proposition that <u>Tar</u> requires that Stevens be named as an
individual defendant in order for aiding and abetting liability
to be found.

substantial assistance, courts have traditionally examined five factors: "(1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) his presence or absence at the time of the tort; (4) his relation to the other; and (5) his state of mind." Id.

Furthermore, "[e]mployees are not liable as aiders or abetters merely because they had some role, or knowledge or involvement." Failla, 146 F.3d at 159.  Rather, a heightened level of knowledge and culpability is required.  Id.  "Mere inaction, passivity, or acquiescence do not in our view rise to the level of aiding and abetting.  They do not have the elements of willfulness, intent, or commonality of goals - of active purpose - that 'aid and abet' requires." Tyson, 918 F. Supp. at 841.

Here, Stevens' conduct does not rise to the level of aiding or abetting as a matter of law.  King argues that Stevens aided and abetted Schaeffer's allegedly discriminatory conduct by accomplishing, or helping to accomplish, the dismissal or withdrawal of plaintiff from the Academy.  (Pl. Opp. at 41.) Assuming the actions of Schaeffer constitute discrimination, the principal question is whether Stevens knowingly and substantially assisted in the discriminatory activities.

While Stevens acknowledges that he was aware that King was repeatedly called into Schaeffer's office and asked to withdraw,

his actions do not constitute substantial assistance.  (Stevens Dep. Tr. at 18:1-21:5.)  His involvement is limited to withdrawing King from the Academy.  He was not present while the alleged discriminatory acts by Schaeffer took place.  His act of withdrawing King from the Academy was in no way intended to encourage or further the allegedly discriminatory acts of Schaeffer.  As Stevens explains, and King does not dispute, Stevens agreed to withdraw King after he was informed by Schaeffer that "Officer King had again failed to complete a physical training component and that she was now over the limit and, therefore, would fail."  (Id. at 24:15-17.)  In fact, King herself noted that Stevens was a "good boss" and treated her fairly.  (King Dep. Tr. at 180:6-10.)  Therefore, this Court concludes that no reasonable jury could find in favor of King on this issue and the BOE's motion for summary judgment will be granted in favor of the BOE.

    **C.**    **Punitive Damages**

        1.   <u>Punitive damages against BOF and Police Academy under LAD</u>

It is an established principle that public entities are subject to punitive damages under LAD.  <u>See</u> <u>Cavuoti v. New Jersey Transit Corp.</u>, 161 N.J. 107, 133 (1999).  In order to award punitive damages under LAD against an employer, two conditions must be satisfied: "'(1) actual participation in or willful indifference to the wrongful conduct on the part of upper

26

management' and (2) 'proof that the offending conduct [is] especially egregious.'" Id. at 113 (quoting Rendine v. Pantzer, 141 N.J. 292, 314 (1995)).  In defining who constitutes "upper management," courts have noted that the phrase is not limited to the uppermost level of management or the highest ranking official.  Id. at 123.  See also Gares v. Willingboro Township, 90 F.3d 720, (3d Cir. 1996)(holding that a police captain is considered "upper management.").

In addition, "for the offending conduct to be 'sufficiently egregious to warrant a punitive damage award,' the conduct must be 'wantonly reckless or malicious,' or, an intentional wrongdoing in the sense of an 'evil-minded act or an act accompanied by a wanton and wilful disregard of the rights of another. . . .'" Gares, 90 F.3d at 732 (quoting Rendine, 141 N.J. at 314).  The willfulness or wantonness requirement "may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Rendine, 141 N.J. at 314.  However, courts have cautioned that punitive damages under LAD should only be awarded in "exceptional cases." Weiss v. Parker Hannifan Corp., 747 F. Supp. 1118, 1135 (D.N.J. 1990).  A plaintiff "must show more than the minimum conduct necessary to prove the underlying cause of action before an award of punitive damages becomes appropriate." Id. at 1136.  A mere violation of

27

LAD does not automatically entitle a plaintiff to punitive damages.  Id.

This Court finds that a reasonable jury could conclude that upper management participated in the allegedly discriminatory conduct.  As director of the Police Academy, Schaeffer constituted "upper management."  In Gares, the Third Circuit concluded that a police captain was considered "upper management" because he "set the atmosphere and controlled the day-to-day operations of that office.  Because of his high rank and pervasive influence over the employees he supervised, the jury was entitled to find that Captain Owens was an upper management official."  Gares, 90 F.3d at 733.  Like Owens, Schaeffer supervised all training at the Academy and had continuous interaction with individuals enrolled in the classes.  As Schaeffer noted he not only supervised the Police Academy, but also all public safety training for the County.  (Stevens Dep. Tr. at 10:17-19.)  Given his rank and job description, Schaeffer could reasonably be found to be an upper management official.  Furthermore, Schaeffer, as the alleged principal wrongdoer, participated in the alleged discriminatory conduct.

Additionally, a reasonable jury could find that Schaeffer's actions and comments were "especially egregious."  Schaeffer's alleged discriminatory conduct toward King was repeated and continuous.  His comments that King was "too old" and that "women

28

should be home barefoot and pregnant" are indicative of Schaeffer's intent and can rise to the level "wantonly reckless or malicious."  Therefore, the Police Academy's and the BOF's motion for summary judgment for punitive damages will be denied.

2.    Punitive damages against Schaeffer under § 1983 and LAD

Punitive damages may be awarded under § 1983 when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).  In Wade, the Supreme Court rejected petitioner's argument that actual intent was necessary to award punitive damages.  The Court examined common law and concluded that "[m]ost cases under state common law, although varying in their precise terminology, have adopted more or less the same rule, recognizing that punitive damages in tort cases may be awarded not only for actual intent to injure or evil motive, but also for recklessness, serious indifference to or disregard for the rights of others or even gross negligence." Id. at 48-49. Therefore, "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." Id. at 51.

Punitive damages under LAD may be awarded for "wantonly reckless or malicious" conduct or an "evil-minded act" that

constitutes "wanton and willful disregard for the rights of another." <u>Maiorino v. Schering-Plough Corp.</u>, 302 N.J. Super. 323, 352 (App. Div. 1997).

As noted, a reasonable jury could find that Schaeffer's actions and comments reflected "evil motive or intent" and were "wantonly reckless or malicious." Therefore, Schaeffer's motion for summary judgment as to King's claim for punitive damages will be denied.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Police Academy's and the BOF's motion for summary judgment will be granted as to King's § 1983 claims and denied as to the LAD claims. Schaeffer's motion will be denied as to King's Section 1983 LAD claim. Finally, the BOE's motion for summary judgment will be granted in its entirety. The accompanying Order will be entered.

**September 29, 2006**          **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                U.S. District Judge