[relates to Docket Items 50 and 51]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTOINETTE KING,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAPE MAY COUNTY BOARD OF<br>FREEHOLDERS, et al.,<br><br>　　　　Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 04-4243<br><br>**OPINION** |

APPEARANCES:

Alan L. Krumholz, Esquire
KRUMHOLZ DILLON, P.A.
574 Summit Avenue
Jersey City, NJ 07306
　　Attorney for Plaintiff

Susanna J. Morris, Esquire
BUDD LARNER, P.C.
1939 Route 70 East, Suite 100
Cherry Hill, NJ 08003
　　Attorney for Defendant Gary G. Schaffer

Richard L. Goldstein, Esquire
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
　　Attorney for Defendants Cape May County Board of Freeholders
　　and Cape May County Police Academy

**Simandle, District Judge:**

**I.　INTRODUCTION**

　　This matter comes before the Court on the motions for summary judgment by Defendants Gary Schaffer and the Board of Freeholders for Cape May County ("Defendants") who seek a legal determination that Plaintiff is not entitled to any economic

damages even if she prevails in proving that they discriminated against her on the basis of age by causing her to withdraw from a police training program for Special Law Enforcement Officers ("SLEOs").

## II.    BACKGROUND

The Court has granted summary judgment to Defendants on Plaintiff's gender discrimination claims but denied summary judgment on her claim that Defendants discriminated against her on the basis of age, in violation of the New Jersey Law Against Discrimination, by causing her to quit the Special Law Enforcement Officer training program at the Cape May County Police Academy.  At the time of her enrollment in the SLEO training program of the Cape May County Police Academy, Plaintiff was a full-time Educational Officer of the Bridgeton Board of Education, which paid her tuition to the Police Academy, and expected future employment with the Bridgeton Police Department, which allegedly sponsored her attendance at the Police Academy, but she did not have an appointment as a SLEO in that department.

In previous submissions, the parties have argued about whether the dismissal of Plaintiff from the Cape May Police Academy could have been justified on the ground that it was illegal for her to attend the Special Law Enforcement Officer training program in which she was enrolled.  Because Defendants have never alleged they knew it was illegal for Plaintiff to

attend the program before she left or that they were motivated by that fact when they allegedly forced her to leave, the Court has previously held that it did not need to resolve the issue. Whether or not it was legal for Plaintiff to attend this training program was not relevant to Defendants' intent and therefore not relevant to the previous motions for summary judgment regarding whether Defendants discriminated against her on the basis of age or gender.

The issue of the legality of Plaintiff's placement in the program arose again during a telephone scheduling conference with the parties on September 6, 2007. Pursuant to that conference, this Court entered an Order adjourning the trial date to permit motion practice "regarding the availability of damages (specifically, the type of jobs in law enforcement for which Plaintiff could have qualified had she successfully completed the Special Police Officer Program in which she had been enrolled in the Cape May County Police Academy)."

These motions followed and Defendants now argue that no damages are available to Plaintiff because the successful completion of the SLEO training program would not have made her eligible for additional jobs due to the fact that her enrollment in the program was not lawful. Plaintiff argues that her appointment to the training program was lawful and part of Defendants' regular course of dealing, and that had she completed

it, she would have qualified to work as a SLEO with the Bridgeton Police Department, which would have supplemented her income.  The deprivation of that supplement is one element of the economic damage for which she seeks compensation.  Therefore, she argues against granting Defendants' motion for summary judgment on damages.

Defendants also seek a determination that they are not liable for any damages flowing from the loss of Plaintiff's full-time employment with the Bridgeton Board of Education because any inability to complete the SLEO training program in which she was enrolled at the Cape May Police Academy was unrelated to the loss of that Board of Education employment.  The Court heard oral argument on November 9, 2007 and reserved decision.

Because it cannot be ruled out that Plaintiff would have been able to earn additional money as a SLEO had she successfully completed the training program, the Court shall deny Defendants' motion to preclude economic recovery on that claim.  However, because it appears that Plaintiff's employment with the Bridgeton Board of Education ended for reasons unrelated to any alleged discrimination by Defendants, the Court shall grant summary judgment to preclude Plaintiff from seeking economic damages related to her termination from the Board of Education position.

## III. DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.[1]

---

[1]   In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[t]he nonmoving party's evidence 'is to be believed, and all justified inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999)(quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995)(citations omitted). The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, the non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).

**B.    Whether New Jersey Law Prohibited Training Plaintiff**

Defendants argue that they cannot be liable for economic harm flowing from any discrimination against Plaintiff during her training to be a Special Law Enforcement Officer ("SLEO") because she had not yet been appointed as a SLEO and it was not lawful for her to receive training prior to appointment.  Plaintiff opposes, claiming there is no law prohibiting this practice and providing evidence that before and after her attendance at the Cape May Police Academy, Defendants trained individuals who expected to work as SLEOs prior to the commencement of their appointment as SLEOs.  Viewing the facts in the light most favorable to Plaintiff, as required in this summary judgment motion, it appears that a reasonable jury could find that Plaintiff would have worked as a SLEO at the Bridgeton Municipal Police Department had she successfully completed her SLEO training at the Cape May Police Academy.

The New Jersey Special Law Enforcement Officers' Act, N.J. Stat. Ann. §§ 40A:14-146.8 to -146.18 ("the Act"), governs the training, hiring and placement of Special Law Enforcement Officers or SLEOs.  Under the Act,

> "Special law enforcement officer" means any
> person appointed pursuant to this act to
> temporarily or intermittently perform duties
> similar to those performed regularly by
> members of a police force of a local unit, or
> to provide assistance to a police force during
> unusual or emergency circumstances, or at

6

> individual times or during regular seasonal
> periods in resort municipalities.

N.J. Stat. Ann. § 40A:14-146.9(h).  SLEOs are employed on a
temporary or part-time basis to supplement regular police forces.
See N.J. Stat. Ann. § 40A:14-146.16 (delineating hours of
employment).  Although Plaintiff was then employed at the
Bridgeton Board of Education, she was training to become a SLEO
at the Bridgeton Police Department (which sponsored her training
although it had not appointed her as a SLEO) and, on the facts
before the Court, Plaintiff planned to supplement her full-time
job with the SLEO income.

Defendants misconstrue this fact and argue that because
Plaintiff was employed by a board of education that was not
permitted to hire SLEOs, her enrollment in the training program
was not lawful.  They point to N.J. Stat. Ann. § 40A:14-
146.10(a), which provides municipalities but not boards of
education with the authority to "appoint special law enforcement
officers."  The Act further provides that:

> No person may commence his duties as a special
> law enforcement officer unless he has
> successfully completed a training course
> approved by the commission and no special law
> enforcement officer may be issued a firearm
> unless he has successfully completed the basic
> firearms course approved by the commission for
> permanent, regularly appointed police . . . .[2]

---

[2]   Apparently Plaintiff was already qualified to use a
firearm.  (Pl.'s Ex. A, King Certif. at ¶ 3.)

7

N.J. Stat. Ann. § 40A:14-146.11(a).  Thus, a SLEO must complete a training course approved by the Police Training Commission before commencing his or her duties.

Plaintiff agrees that boards of education are not empowered to hire SLEOs; but she argues that the municipality of Bridgeton lawfully sponsored her for the SLEO training in anticipation of hiring her as a part-time SLEO once her training was complete. Thus, Plaintiff argues that her placement in the training program was lawful and that successful completion of the program would have enhanced her earning opportunities.  Plaintiff points to N.J. Stat. Ann. § 52:17B-69.1, which provides,

> a. A person who does not hold a probationary or temporary appointment as a police officer, but who is seeking such an appointment may enroll in a police training course provided that person:
>
> (1) meets the general qualifications for a police officer set forth in N.J.S.40A:14-122 and such other qualifications as the commission may deem appropriate; and
>
> (2) applies to and is accepted by a commission approved school for admission to a police training course.

Plaintiff argues that this law permitted her placement in the training program prior to her employment with the Bridgeton Police Department.

However, N.J. Stat. Ann. § 52:17B-69.2 limits the application of this section to those seeking full-time police employment:

> A person who completes a police training course pursuant to N.J. Stat. Ann. § 52:17B-69.1 shall only be eligible for appointment as a permanent full-time member of a police department or force.

When the Court reads these provisions of the statute together, it becomes clear that N.J. Stat. Ann. § 52:17B-69.1 provides for provisional training - in the separate course required for full-time police officers - for those who are seeking employment with a police department as a full-time permanent officer.  In other words, the statute does not apply to SLEOs.

For persons seeking appointments as full-time permanent police officers, the law permits enrollment in the appropriate training program even if the enrollee does not yet have an appointment in hand, under the alternate route created in 1998, which is described as follows:

> With exceptions not relevant here, the [Police Training Act ("PTA"), N.J. Stat. Ann. § 52:17B-66 to -77.6,] requires the successful completion of an approved police training course as a prerequisite to appointment as a permanent police officer in a municipal police department. N.J.S.A. 52:17B-68. As originally enacted, the PTA required that an individual was eligible to enroll in a course only if he or she was first hired as a police officer on a probationary or temporary basis. N.J.S.A. 52:17B-69. Under this scheme, often referred to as the traditional method, the municipality

9

> would then pay the cost of the course, and the officer would attend on a leave of absence with pay. . . .
>
> The 1998 amendment authorized an alternate route, by which an individual not hired as a police officer could enroll in a police training course at his or her own expense and attend on his or her own time, subject to meeting prescribed qualifications and passing a background check. N.J.S.A. 52:17B-69.1. Upon successful completion of the course, the individual could seek appointment as a police officer. Ibid. The amendment further provides that an alternate route individual "shall only be eligible for appointment as a permanent full-time member of a police department or force." N.J.S.A. 52:17B-69.2.

Azzara v. Twp. of Waterford, 392 N.J. Super. 322, 324-25 (App. Div. 2007).  This whole scheme for training and appointing full-time permanent officers, therefore, is separate from the statutory scheme for SLEOs, which, Defendants concede, contains no provision barring SLEO training prior to employment.

In the absence of any law prohibiting provisional training of SLEOs and in light of statutory authority for the pre-appointment training of permanent police officers under the "alternate route" since 1998, supra, the Court is not convinced that Plaintiff's training prior to employment was unlawful. Defendants conceded that no statute explicitly provides that SLEOs must be appointed in advance of training.  Plaintiff argues, and it appears correct in practice, that there is no

prohibition on a municipality sponsoring a candidate for training as a SLEO prior to appointing that person to a SLEO position.

Further, looking at the dealings of the parties, it does not appear that the municipalities or the training academies construe any such restriction that is not apparent to the Court. Plaintiff points to evidence showing that several individuals in her position at the Bridgeton Board of Education also worked as SLEOs for the Bridgeton Police Department.  (Pl.'s Ex. K, Stevens Ltr., Sept. 12, 2007; Pl.'s Ex. O-1, Stevens Dep. at 40-41.)  She also points to evidence that the Bridgeton Police Department sponsored her attendance at the Academy and that they had promised her a job as a SLEO upon successful completion of the training.  (Pl's Ex. E, Everingham Certif. at ¶ 4.)  Defendants conceded at oral argument that six months after Plaintiff left the training program they admitted another SLEO candidate in the same manner that they admitted Plaintiff and that, like Plaintiff, that individual was sponsored by the Bridgeton Police Department and the training was paid for by the Bridgeton Board of Education.

The Court recognizes that the New Jersey Law Against Discrimination ("LAD") expresses "'the clear public policy of this State . . . to abolish discrimination . . . .  Indeed, the overarching goal of the [LAD] is nothing less than the eradication of the cancer of discrimination.'"  Raspa v. Office

of Sheriff of County of Gloucester, 191 N.J. 323, 335

(2007)(quoting Fuchilla v. Layman, 109 N.J. 319, 334, 537 A.2d

652, cert. denied, 488 U.S. 826 (1988)).  The LAD:

> "is one of New Jersey's leading legislative
> pronouncements that set forth the familiar
> proposition that the clear public policy of
> this State is to eradicate invidious
> discrimination from the workplace[,]" Carmona
> v. Resorts Int'l Hotel, Inc., 189 N.J. 354,
> 370 (2007) (internal quotation marks omitted);
> that "[f]reedom from discrimination is one of
> the fundamental principles of our society[;
> and that] the LAD is the Legislature's attempt
> to protect society from the vestiges of
> discrimination[,]" L.W. v. Toms River Reg'l
> Schs. Bd. of Educ., 189 N.J. 381, 399 (2007)
> (citations and internal quotation marks
> omitted). [The New Jersey Supreme Court has]
> long held that [courts] apply the LAD
> liberally, Fraser v. Robin Dee Day Camp, 44
> N.J. 480, 486 (1965); Levitt & Sons, Inc. v.
> Div. Against Discrimination, 31 N.J. 514, 524,
> appeal dismissed, 363 U.S. 418 (1960), a
> mandate repeated by the Legislature. N.J.S.A.
> 10:5-3 (stating that "[t]he Legislature
> intends that . . . [the LAD] shall be
> liberally construed").

Raspa v. Office of Sheriff of County of Gloucester, 191 N.J. 323,

335 (2007).  In light of this policy, it would be inequitable to

shield Defendants from any economic liability under the LAD

merely because they argued, after a problem arose, that an

individual should not have been enrolled in the Academy.  The

Court notes also that Defendants benefit financially from this

arrangement, which they belatedly argue is unlawful, as they

train SLEO candidates in exchange for the tuition money that

Bridgeton Board of Education pays them.  There is no evidence that they have ceased this practice.

However, Defendants further argued in their papers that if N.J. Stat. Ann. § 52:17B-69.1 is interpreted to permit Plaintiff's training, subsection 1 would bar her participation in the training because of her age.  Specifically, because only a person who "meets the general qualifications for a police officer set forth in N.J.S. 40A:14-122" may enroll in training under this provision, and because, full-time police officers must be appointed when they are between 21 and 35 years old, pursuant to N.J. Stat. Ann. § 40A:14-127, a separate statute than one referenced by the provision Plaintiff invokes, Plaintiff, who was age 36 at the time of her training, was not authorized for training under this statute.

 Defendants' argument that Plaintiff was not eligible because she was 36 years old is off point, as they essentially conceded at oral argument.  Defendants had invoked a separate statute, which N.J. Stat. Ann. § 52:17B-69.1 does not incorporate for temporary officers, and argues that it, too, applies.  The authorizing provision requires that a prospective officer must meet the general requirements in N.J. Stat. Ann. § 40A:14-122, which contains no age restriction.  There is no real argument that Plaintiff would be disqualified by failing to meet the "general qualifications" that Plaintiff must meet under this

13

statute, entitled "General qualifications of members of police department and force; temporary appointments; absences from duty":

> Except as otherwise provided by law, no person shall be appointed as a member of the police department and force, unless he:
>
> (1) is a citizen of the United States;
>
> (2) is sound in body and of good health sufficient to satisfy the board of trustees of the police and firemen's retirement system of New Jersey as to his eligibility for membership in the retirement system;
>
> (3) is able to read, write and speak the English language well and intelligently;
>
> (4) is of good moral character, and has not been convicted of any criminal offense involving moral turpitude.
>
> The appointing body, officer or officers of the municipality when authorized so to do, may employ such officers and other personnel for said police department and force as temporary employees in emergencies, or for certain specified parts of the year, as needed.
>
> Except as otherwise provided by law, any permanent member or officer of such police department and force who shall be absent from duty without just cause or leave of absence, for a continuous period of 5 days, shall cease to be a member of such police department and force.

N.J. Stat. Ann. § 40A:14-122. It is clear that these are the "general qualifications" to which N.J. Stat. Ann. § 52:17B-69.1 explicitly refers by citation, thereby requiring that the same very basic eligibility standards apply to full-time and temporary

police officers.  There is no valid argument that the specific age requirement for full-time employees should also apply to Plaintiff as a SLEO.  While Defendants argue that all provisions for police training are incorporated implicitly for SLEOs, this is simply not the case and Defendants cite no authority to support that argument with respect to the age limit of 35 years.

Further, and more importantly, the Court does not rely on N.J. Stat. Ann. § 52:17B-69.1; that provision does not apply to SLEOs and has no application to this matter.  The issue here is whether there is any legal impediment that should bar Plaintiff from seeking the lost wages that a jury may determine she would have earned as a SLEO on completion of her SLEO training.  Defendants have not provided the Court with any authority to show that her employment and training were not legal.

The Court is also persuaded that provisional training of SLEOs is not contrary to the intention of the SLEO Act.  For example, under N.J. Stat. Ann. § 40A:14-146.11(a)(2),

> The commission may, in its discretion, except from the [training] requirements of this section any person who demonstrates to the commission's satisfaction that he has successfully completed a police training course conducted by any federal, state or other public or private agency, the requirements of which are substantially equivalent to the requirements of this act.

Thus, although the SLEO Act sets out general training requirements, it also contemplates that some SLEOs will have

15

received training before seeking appointment.  In addition, the
SLEO Act provides for liberal access to training programs:
"Training may be in a commission approved academy or in any other
training program which the commission may determine appropriate."
 N.J. Stat. Ann. § 40A:14-146.11(a).  Because it appears that
there was nothing unlawful about Plaintiff receiving training
prior to appointment as a SLEO, Defendants are not entitled to
summary judgment precluding any damages that may have arisen from
loss of SLEO employment as a result of their alleged
discriminatory withdrawal of Plaintiff from the SLEO training
program at Cape May Police Academy.[3]

### C.   Damages for Loss of Educational Officer Job

Defendants also argue that they are entitled to summary
judgment on any claim that Plaintiff lost her job as an
Educational Officer at the Bridgeton Board of Education because
of an alleged ousting from the SLEO training program.  Defendants
claim Plaintiff has muddied the factual situation because the

_____

[3]  This holding, that Plaintiff is not precluded from
seeking to recover economic damages relating to her hoped-for
appointment as a SLEO at the Bridgeton Police Department, does
not decide whether such damages are provable at trial.  On
Plaintiff's remaining claims of age discrimination under the
NJLAD, Plaintiff still must prove that Defendants discriminated
against her in the training program on account of her age, and
that it was more probable than not that (1) she would have
successfully completed the training program absent age
discrimination and (2) she would have then been appointed to a
SLEO position by the Bridgeton Police Department, all before the
matter of compensatory damages for lost SLEO earnings can be
evaluated.

correct training program for Educational Officers is a Basic
Training Course; the SLEO course would not have entitled her to
maintain her position with the Board of Education.  In fact,
after the withdrawal from the SLEO program, Plaintiff apparently
enrolled in the correct program at the Gloucester County Police
Academy, a Basic Training Course which is the same as the course
for full-time permanent police officers, and failed it, having
nothing to do with Defendants.  Thus, Defendants argue, she
should be estopped from arguing there were any damages related to
the loss of her employment with the Bridgeton Board of Education.
First, they claim, she lost that position due to her own later
failing and second, the withdrawal from the SLEO program could
have had no effect on her ability to continue in the Board of
Education position.

Defendants have provided evidence that the required training
course for Educational Enforcement Offices is the Basic Training
Course.  <u>See</u> N.J. Stat. Ann. § 18A:6-4.4.  Specifically, "[t]he
governing body of any institution of higher education, academy,
school or other institution of learning may appoint such persons
as the governing body may designate to act as policemen for the
institution," N.J. Stat. Ann. § 18A:6-4.2, so long as that person
gets the proper training.

> Every person so appointed and commissioned
> shall, within 1 year of the date of his
> commission, successfully complete a police
> training course at a school approved and

>authorized by the Police Training Commission;
>provided, however, that the Police Training
>Commission may, in its discretion, except from
>the requirements of this section any person
>who demonstrates to the commission's
>satisfaction that he has successfully
>completed a police training course conducted
>by any Federal, State or other public or
>private agency, the requirements of which are
>substantially equivalent to the requirements
>of that at a school approved by the
>commission.

N.J. Stat. Ann. § 18A:6-4.4.  According to evidence from

Defendants, the training course that Educational Officers must

attend is the Basic Training course for permanent police

officers, not the SLEO class.  (See Ex. A to Schaffer Reply Br.;

Ex. B to Bd. of Freeholders' Reply, Bond Tr. at 36)(testimony

from Pamela Hamilton Bond, a representative from the Police

Training Commission, that basic training program is the approved

program).  If that is so, then Plaintiff's failure to complete

the SLEO class could not have been a factor in the loss of her

employment at the Board of Education.  Plaintiff had disputed the

validity of Defendants' evidence, but did not provide any of her

own on the required training course for Educational Officers, and

at oral argument Plaintiff's counsel conceded that the Basic

Training course was the proper course for Educational Officers.

Plaintiff subsequently enrolled in and failed the Basic

Training course offered by Gloucester County.  Counsel for

Plaintiff continues to contend, however, that a jury could find

that her failure of the basic training course flowed from the

18

earlier discrimination.  There is simply not sufficient evidence from which a reasonable jury could make that determination, however.

Plaintiff testified at her deposition that she saw an instructor from the Cape May Police Academy prior to failing the tests in her Basic Training course at Gloucester County Police Academy.  She insinuated that he threatened to tamper with her results and that since his threat "all kinds of weird things started happening."  (King Dep. at 115 to 116 in Pl.'s Ex. O-5.) In his opposition to the motion to dismiss, Plaintiff's counsel attempts to argue that summary judgment is not appropriate on damages related to the termination from employment with Bridgeton Board of Education because Plaintiff was fired for failing the tests and she only failed because a Cape May employee intimidated her, thus reviving memories of the discrimination she suffered there.  First, the evidence does not support this theory. Plaintiff herself did not testify that her emotional state in the Gloucester County Basic Training Course was altered by this confrontation, nor that it caused her to fail the course. Second, there is no evidence that her failing test results were inaccurate, let alone that the results reflected tampering.

Accordingly, partial summary judgment for Defendants is granted to the extent that Plaintiff is precluded from asserting

that her loss of employment at Bridgeton Board of Education was caused by Defendants' discriminatory acts.

**IV.   CONCLUSION**

Because there is no law that barred Plaintiff from receiving SLEO training from Cape May County Police Academy prior to commencing SLEO employment with the Bridgeton Police Department and because Plaintiff has presented evidence that Bridgeton Police Department was prepared to hire her if she completed that training, the Court shall deny summary judgment insofar as Defendants seek to preclude Plaintiff from recovering those economic damages.

However, it also appears that completion of the SLEO course would not have lawfully permitted Plaintiff to retain her position with the Bridgeton Board of Education.  That position required separate training in a Basic Training Course, which is not a part of this lawsuit.  There is no evidence from which a reasonable jury could determine that Plaintiff's failure of that course was the result of any conduct or omission on the part of Defendants.  Therefore, Defendants are entitled to summary judgment precluding Plaintiff from seeking any lost income she

suffered as a result of losing her Bridgeton Board of Education position.  An appropriate Order shall be entered.


**November 14, 2007**                              **s/ Jerome B. Simandle**
Date                                               JEROME B. SIMANDLE
                                                   U.S. District Judge